The next case is at the Digital versus Lenovo Household, 2022-1924. Mr. Argenti again. Thank you again, Your Honor. May it please the Court. Three main problems impact the Board's analysis as to the independent claims of the 449 patent. First, the Board erred in finding a motivation to modify the Lee reference to use differential quality reporting in order to achieve efficiency benefits. The prior art doesn't show that differential quality reporting would use less bits. Second, the Board erred in finding the prior art combination would satisfy the requirement that the second channel quality indication be used to indicate a modulation encoding set that has been determined by the user equipment. The Board's determination on this issue is directly at odds with its motivation finding. Third, the Board misconstrued the claims by construing a channel quality of the plurality of downlink resources to encompass the channel quality of any member of that plurality. Turning first to the Board's erroneous finding regarding motivation to modify Lee with Tiedemann's relative values. Lenovo's combination of Lee and Tiedemann involved using Tiedemann's relative values instead of Lee's full SINR values to report channel qualities. As motivation, the Board found that the benefit of using reduced bit differential indicators was known in the art. The problem here is that a known benefit of transmitting fewer bits isn't enough. There's no evidence that using relative values in the Lee-Tiedemann combination would result in transmitting fewer bits. Tiedemann doesn't say that its relative values use fewer bits than full SINR values would. Instead, the Board relied on a different reference for that, LUNB. But LUNB uses a different type of reporting than in the Lee-Tiedemann combination. In LUNB, it's using low bit differential reporting to incrementally track the changes to a single channel over time. One bit, one bit, one bit, or maybe two bits, but it's incremental over time to a single channel. Whereas the Lee-Tiedemann combination would send a single differential value that conveys the entire difference between two different channels. This is really challenging for me. So let me just see if I understand it at a basic level, which is that you're not disputing that there were known benefits of using fewer bits, right? You're arguing that the other side didn't show that the relative values would be reported using fewer bits. Did I get that right? I think essentially that's right. We are not disputing that LUNB says that in the LUNB system, this is a benefit, that we are using fewer bits and that is more efficient reporting. So the issue, though, is that LUNB doesn't stand for the general proposition that using differentials leads to fewer bits. That's specific to LUNB, and it doesn't carry over to Lee-Tiedemann. The Board made a fact-finding to the contrary. The Board found that LUNB, obviously speaking about every specific embodiment, but also contains a more general teaching that using differentials is more efficient than using absolute values. And then that was backed up by the expert, Dr. Akambora. So we're now in substantial evidence land again and trying to figure out whether what happened below is something unreasonable in terms of reading and understanding this prior art reference. Dr. Akambora's testimony on that point cited no corroboration other than LUNB. So the issue of whether LUNB provides a general teaching versus a more specific one is key here. And the fact remains, while maybe a poor choice of words, the fact remains, but while that is a factual issue, it was error for the Board to ignore our evidence to the contrary, our evidence that LUNB doesn't apply. You can't, on the one hand, rely on LUNB as evidence of motivation to one of skill in the art while at the same time refusing to consider our evidence that LUNB would not motivate one of skill in the art on the basis that LUNB isn't part of this ground. I mean, it could either accept your evidence as correct and be led by it or not. What do you mean refusing to, I mean, they rejected your argument, right? They rejected our argument on the basis that it wasn't relevant to this ground. They said, LUNB's only part of the combination in ground four. Here we're dealing with ground three. So they refused to consider our evidence in the context of ground three. They said, no, that's not. What was your evidence, though? I mean, as I understand it, Dr. Mahon or Mr. Mahon, his assertions weren't really backed up by anything. It was more trying to create abstract hypotheticals that could generate a situation where a differential wouldn't be more efficient than reporting out an actual value. Our evidence was exactly what I've been explaining here today, that LUNB's lower bit efficiency improvements are specific to LUNB's approach and that they don't carry over. It was this distinction between low bit incremental reporting. If a single channel is changing over time, you just report one bit changing, one bit changing, one bit changing, until you catch up to what the change is. I guess the question is, if you were to report out ten and then one and then two, wouldn't that require fewer bits than reporting out ten, nine, and eight? There are possible mathematical combinations where that would be accurate, just like there are mathematical combinations for a series of ten. There are going to be combinations where you're using more bits to convey the differential and where you're using less bits to convey the differential. If you need to be able to cover the entire potential difference range, you can't use less bits. You need to have enough bits to cover the biggest possible differential. That's what our expert explained and that's what the board disregarded as not relevant to this round. Beyond the flawed motivation finding, the board also erred in determining that the combination of Lee and Tiedemann would satisfy the requirement that the second CQI indicate an MCS that has been determined by the user equipment. The issue here turns on the board's finding that Tiedemann's relative values, if used in Lee, would allow for a mathematical determination of the corresponding full SINR value. There's an inconsistency between that finding and the motivation issue that we just discussed, where the board concluded that the reason to combine Lee and Tiedemann was to save bits by using relative values. Lenovo can't have it both ways here. Can you help me understand if the proposed combination is to report out the following values, 10, 1, and 2, then wouldn't you know that the three possible channels or base stations have actual signal values of 10, 9, and 8? If the second and third values are differential values and you know that, then you understand how to get back to what are the actual values, because those relative values are being compared against the lead value of 10. But if you look at this as a matter of binary math, if the numbers were 10, 1, and 2, and the differentials were 10, 8, and 9, you're now using differential values that are greater than the actual full SINR values in terms of binary math. Yeah, but that wasn't my question. My question was if the modified combination reports out 10, 1, and 2, then you immediately know that the actual values are 10, 9, and 8. But that is assuming that you have enough bits to convey the full differential and therefore reverse the math to calculate the full SINR value. Once you're using reduced bit differentials, you are necessarily sending less information and losing the ability to reverse the math and calculate the full SINR values. That's what we explained, and that's what the board didn't grasp. You can't use less precise information to derive the full precision SINR value at the base station. Once that information is gone, it can't be recovered, and Lenovo never provided any evidence that this could be done. The board's finding has been an evidentiary basis. Moreover, as I mentioned, the board again committed legal error in refusing to consider our arguments and evidence on this point. The board said our expert's testimony on this issue only related to the threshold values combination that wasn't reached in the decision. That was a different combination of a different aspect of Tiedemann. There's relative values. There's threshold values. Dr. May and our expert explicitly testified that his analysis also applied to the relative values combination. It wasn't limited to the threshold values combination, as the board incorrectly thought. In case there was any doubt, Lenovo now concedes on appeal that the threshold values are relative values. The board had no basis to refuse to consider the arguments and evidence in question, and it was in error to do so. It's important to understand that the board didn't look at this as a factual issue and say, we don't agree with you that this is going to result in less bits. They dismissed our expert's testimony as not relevant to this ground because they incorrectly thought that it only applied to the threshold values when he explicitly said that it also applied to the relative values, and Lenovo now admits that. Now, turning to the board's construction of the plurality limitation, the parties agree that this claim requirement requires a channel quality related to a plurality of downlink resources as a whole, such as a mean. Where the board went wrong was in interpreting this term to also extend to the alternative nine embodiment that uses an individual resource as a reference. The claims on their face distinguish between a channel quality of a plurality of downlink resources, that's the first channel quality in the claims, and a channel quality of a particular downlink resource, that's the second channel quality indication. Lenovo acknowledged this distinction in their petition. The board erred in adopting Lenovo's reply argument that the quality of any single member of the plurality can somehow also indicate the quality of the plurality, simply because it is a member of the plurality. That is at odds with the agreed upon portion of the construction that the quality of the plurality must be related to the quality of the downlink resources as a whole. Maybe I'm missing something. We're talking about a maximum CQ, right? The maximum was the mapping to the prior art, but the construction was that any member of the plurality conveys the quality of the plurality. But you agreed that a mean would be sufficient. You're just saying that a maximum CQ would not be sufficient. Is that what the issue came down to? We agreed that a mean would be sufficient. We did not agree that the constructions should extend to alternative nine. So it wasn't about a maximum specifically. But for purposes of this appeal, all we have to decide is if not, that whether or not a max value is enough to satisfy the claim. Well, that's not Lenovo's argument on appeal. Lenovo's argument is that any member of the plurality... Well, that was the board's decision. The board's decision was the prior art teaches a max value, and that is a channel quality value related to the plurality of downlink resources as a whole. And so that's all we need to decide here on appeal. Is there some reason why we would need to go further and figure out whether every single version of alternative nine is also included in the claim beyond the max value in the prior art? Yes, because that's the board's construction. That's Lenovo's position in response on appeal. Their position is not that the issue is limited to the maximum. But what does it matter? The analysis is, does this prior art teach this limitation or not? And if the prior art teaches a max value, and we conclude that yes, the max value is a channel quality value related to the plurality of blah, blah, blah, then why isn't this just over? Well, again, because you can't get that from the board's decision. The board's decision when it is addressing the claims that survived Lenovo's challenge in the IPR makes it clear that in the board's view, being a maximum isn't enough here. I guess what I'm... Is this patent expired? This patent, yes, has expired. And I forgot, is the other patent expired? No, that patent is not expired. Okay, is there any pending litigation going on for either of these two patents? That is a complicated question, Your Honor. My understanding is that there is state litigation pending related UK proceedings. And beyond that, this is a worldwide dispute between InterDigital and Lenovo that I think would take more than the time I have, nor am I qualified to address the state of the worldwide dispute. But there is... I think the short answer is that there is pending litigation that's state in the United States involving these patents. I guess I'm just trying to understand what does it matter, what the actual articulation of the claim construction needs to be if under any potential articulation, the prior art matches up with that. But the prior art doesn't match up with... I'm just thinking about overall consequences. I know you have other arguments about why the prior art doesn't teach certain understandings of the claim. But what is the overall consequence if we conclude no matter how you slice the claim, the prior art is going to match up? Well, I would dispute that conclusion. And then therefore, you know, the claims would be affirmed as being unpatentable. So I would dispute that conclusion. That's right, but I'm just trying to understand are there any broader consequences to selecting one particular construction over another if we conclude the claims are going to be unpatentable either way, any other way in light of the prior art here in front of us. Well, there are the other issues that we have on appeal as to this patent. Right, so the consequences are just very specific to this 449 patent. The 726 has a similar of the plurality limitation. If that was the question you're asking. Okay. Counsel, your time has expired. Thank you, Your Honor. Mr. McAllister. Thank you, Your Honor. I would like to start with the motivation to combine issue since that's what Mr. Argenti started with. The Board obviously found a motivation to combine existed as a fact. It is a fact issue and agreed with our showing that Lundby, which was not one of the references that was combined, that was cited as evidence of a motivation to combine showing that a person of ordinary skill in the art would know that differential values such as the relative values of Tiedemann could be used to say bits. That was our theory. That's what the Board agreed with. Obviously, that goes to an understanding of how a person of ordinary skill in the art would read the prior art and what the prior art would mean to a person of ordinary skill in the art. This is a clear fact issue. The Board had plenty of evidence before it. It cited portions of Lundby. It cited Dr. Acampora's testimony in his declaration, paragraphs 163 and 64, where he analyzes several more passages from Lundby and provides his opinions. That should be substantial evidence. Lenovo's main argument is that Lundby is a different type of relative value and it won't work with Lee. That was their main argument. The Board pointed out that we're not taking anything from Lundby and putting it into Lee. We're not bodily incorporating anything. It's an obviousness combination. But the Board specifically rejected this argument that Lundby is a different type and you can't use it. It's at the Joint Appendix, page 53 to 54. Again, that's the Board's job. They had evidence to support that, including the testimony of Dr. Acampora. It seems like that's substantial evidence that has to be upheld and not reweighed from the get-go. Their argument that the Board didn't consider this is wrong on the record, as I said, Joint Appendix, page 53 to 54. On page 54, they actually say, having considered the evidence of record as a whole, we agree with Petitioner. They did review this and rejected it. If I can go to whether the combination or the differential values in the combination actually indicate the MCS. This combination was relatively simple. I think, Judge Tenney, you must recognize, given your hypothetical, the particular message in Lee that we were pointing to, I believe it's Figure 5, has a number of what are called SINR values, they're channel quality values, ordered from best to worst. And Tiedemann has a similar message in one embodiment, not the UBITS embodiment we were talking about earlier, a different embodiment, where he has a different kind of channel quality, it's E over I, but he puts in the best channel quality and then he puts in these relative values, which are differential values. And our argument was, just use the differentials in the message of Lee for all of those SINR values, except for the first one. So exactly like you mentioned, Your Honor, 10, 1, and 2 in the combo is the same as 10, 9, and 8 in the uncombined Lee message. So it's just a mathematical or numerical tweak, again, algebra. And the board agreed. In fact, the board actually found that it was two things. First of all, the board found that Lee does, in fact, indicate an MCS using its SINR values. And then it found that in combination, those differential values would do it in the same manner because it's just a differential value that gets you to the same SINR value. So if I can address the claim interpretation issue. Our argument and what the board agreed with is Alternative 9 is clearly an example of the claimed inventions. The 449 patent is all about sending a message with channel quality information. That's the whole point. And they all require basically sending some kind of channel quality value and then differential values. In the specification, they have nine different alternative ways to send up some kind of channel quality information. But only two of them include a channel quality and then differential values. Eight and nine. So the board looked at that and said, that is the disclosure that most closely aligns with the claim language. And that informed its interpretation. But it also informed its resolution of whether the claim read on the prior art because it agreed with us that Alternative 9, which says a reference value you send up and then differentials. And we said, we argued, the best channel quality plus differentials is analogous to a reference value and the differentials. I understand why a max value could possibly give you some information about the other members' values. Because you know immediately none of the other member values can be as high as the representative max value. But if you just pick some other value randomly in the soup, in the pot of values, I don't see how that given value would give you any information immediately about what are the values in the rest of the group. So for example, if the power values were 10, 9, 8, 7, 6, 5, and then you pick 7, which is as your reference value, you have no idea what the other values could be. You don't have any context like you would with, say, a max value or a minimum value. And so what I'm trying to figure out is, does it make sense to say all possible versions of Alternative 9 actually fit within this claim, which calls for some kind of channel quality value that gives you some information about the rest of the group. So we obviously pointed to the max, so the question might be not necessary. This could be academic, but I still want to know why is it correct to say, as the Board of Governors did, that all of Alternative 9 fits within this claim. I will point something out to you in the patent that I think may answer your question. The reference value, and I'm looking at the patent, it's Joint Appendix, page 76. It's table 2 of those, column 5 over 6. Alternative 9 is not only, it's a reference value in the sense that it is used to calculate the differentials. So the system knows that. So why that is different from what you just said is the system would know if you pick one in the middle, 6. More about it, because the system would know how that 6 was calculated. And if that's your reference value and you pick another one, 4, it would know that the 4 you got to was a differential against 6. That's, I believe, the answer to your question. But the board referred repeatedly to your example of such as the maximum value. That's true. That's what the board was analyzing, right? Yes, that's right. And the board found, as Judge Ten mentioned, that the max value does tell you something about the plurality as a whole. Is there a corresponding district court claim construction out there? Yes, Judge Stark at the time was sitting in the District of Delaware and on our case at the time and agreed with this interpretation completely. So yes, and that case is ongoing. Stayed, but ongoing. Just if I may make one more point and then answer any other questions. Again, as of the last one, I think there are arguments in the petition, mappings that were not decided. So, I mean, I think you should agree with my arguments. But if not, again, this one also has to go back because they just weren't addressed by the board. Unless the panel has any more questions, I'm willing to cede the rest of my time. Thank you, counsel. Thank you. Mr. Argenti has two minutes. Thank you, Your Honor. As to the first two issues regarding the motivation to combine and the missing second CQI, we heard Lenovo's counsel argue that the board did consider the factual issues that InterDigital raised during the case. We disagree with that. But I think it's clear that the board rejected those facts, not on the basis of the substance of the facts, but for legally erroneous issues. But more importantly, what we didn't hear from Lenovo is any mention of this inconsistency between the two conclusions, between the motivation and the missing second CQI. If you are using less bits to convey the differential, there is no evidence of how you would be able to then get back to the full SINR that is part of their combination and saying that's how you would indicate the second CQI that indicates an MCS. Lenovo did not address how this could be achieved in its petition, and we've never heard anything from them since, either in the IPR or on appeal. The inconsistency is simply hanging out there, and they have no answer to it. As to the claim construction, we heard Lenovo rely heavily on Alternative 9 simply because it involves different indications. But just because one aspect of that embodiment matches the claimed approach doesn't mean that the entire embodiment does. If that was the case, then all nine of the alternatives in Table 2 would map to the claim because they all involve channel quality indications. You can't find one claim element in an example and then assume that it maps to the claims. So the Board's reliance on that turns on a logical fallacy. As to the alternative mapping, the alternative claim construction argument, we've explained in our briefing why there was no such alternative mapping. Thank you. Thank you. We appreciate both your arguments. The case is submitted.